IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Charles W. Heiges                                    Case No. 3:07CV1157

        Plaintiff

    v.                                                      ORDER

JP Morgan Chase Bank, N.A. *et al.*

        Defendants.

        This is a contract dispute involving an unpaid credit card bill. Plaintiff Charles W. Heiges alleges violations of the Fair Credit Billing Act, 15 U.S.C. § 1666, Fair Credit Reporting Act, 15 U.S.C. § 1681, and state law causes of action for defamation, invasion of privacy, and intentional infliction of emotional distress. Pending is a motion by defendant JP Morgan Chase [Chase] to stay further proceedings pending arbitration under its credit card Agreement. Jurisdiction is proper under 28 U.S.C. § 1331, § 1337, and § 1367.

        Chase, a Delaware-based banking company, distributes credit cards to individuals and businesses. Defendant Equifax, a Georgia-based company, collects and provides information about individual credit and corporate financial history. Defendants Experian, also a Georgia-based corporation, and Trans Union, an Ohio-based company, provide similar services.

        Pending is Chase's motion to stay this court's proceedings until arbitration proceedings have been completed. For the reasons discussed below, Chase's motion is granted.

**Background**

1

Heiges formerly worked for Bay Area Products, Inc. [Bay Area], an Ohio corporation. At the time of the company's incorporation, Heiges opened a corporate credit card account for use for business purposes in the company's name. Plaintiff was an authorized user of this account.

Heiges alleges that he never signed any agreement accepting liability, in his personal capacity, for any charges on the account. Heiges' name, however, did appear on the credit card. In addition, bills seeking payment for the company's charges were addressed to him and Bay Area. Furthermore, the Credit Card Agreement [Agreement] specifically stated:

> Each person who is included within the definition of "you" below is responsible, together and individually, for paying all amounts owed. . . . "You", "Your", or "Cardmember" refer to the person named on the Enclosed Business Card, or to whom a Business Card is issued on behalf of the company.

[Doc. 22-4].

The Agreement also included an arbitration clause requiring that "any claim, dispute or controversy by either you or us against the other, arising from or relating in any way to this Agreement or your account, including claims regarding the applicability [o]f this arbitration clause or validity of the entire Agreement, shall be resolved by binding arbitration." *Id.* The following warning was included:

> IN THE ABSENCE OF THIS ARBITRATION AGREEMENT YOU AND WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE CLAIMS THROUGH A COURT TO A JUDGE OR JURY, AND/OR TO PARTICIPATE OR BE REPRESENTED IN LITIGATION. . .

*Id.*

The clause also specified that the contract would "be resolved by binding arbitration by the National Arbitration Forum." [Doc. 22-3].

2

In December, 2003, Chase mailed Heiges an amendment to the arbitration provision. The amendment was substantially similar except that it provided that :

> "You" and "us" include the employees, parents, subsidiaries, affiliates, beneficiaries, agents and assigns of you and us. All claims are subject to arbitration no matter what theory they are based on or what remedy they seek. . . . The arbitration provision applies to all Claims now in existence or that may arise in the future."

[Doc. 22-3].

The amendment also provided that, in addition to the National Arbitration Forum, the party bringing the claim may select from JAMS/Endispute or the American Arbitration Association to arbitrate the dispute.

Heiges could have opted out of the arbitration amendment if he had, as provided in the Agreement, so "notif[ied] [Chase] in writing by January 26, 2004." [Doc. 22-3]. As Chase received no such notice, the amendment, as stated in the mailing, became effective on February 1, 2004.

In April, 2005, Chase mailed Heiges a second amendment to the arbitration clause. Again, the amended version mirrored both of the clause's earlier versions. The clause, however, included a number of additional protections for the consumer, namely that "if the law authorizes such relief, the arbitrator may award punitive damages or attorney's fees." [Doc. 22-3].

The initial Agreement also included a "choice of law" clause stating that the Agreement would be "governed by the law of the state of Arizona and, as applicable, federal law." [Doc. 22-4]. The Agreement was subsequently amended to substitute Delaware for Arizona.

On April 18, 2005, counsel for Bay Area filed papers seeking dissolution of the corporation. At the time, Bay Area allegedly owed $6,880.41 on the credit card account.

Subsequently, Chase allegedly reported to a number of "consumer information agencies" that Heiges was personally in default with regards to the credit card debt. Heiges claims these reports

3

greatly harmed his credit rating and severely damaged his ability subsequently to obtain a loan. In

addition, Heiges also allegedly suffered repeated humiliation as a result of such reporting

<strong>Discussion</strong>

Heiges raises a number of arguments against the validity of the arbitration clause.He

contends: 1) he is not bound by the Agreement and its arbitration provision because there is no

signed agreement between him and Chase; 2) he, in his individual capacity, was never a party to the

Agreement; 3) he did not know that by being an authorized user he would be waiving his rights to

trial; and 4) the arbitration provision is unconscionable, and thus, unenforceable. As an initial matter,

however, I must determine which state's laws shall govern the resolution of these claims.

<strong>1. Choice of Law</strong>

<strong>A. Which State's Law Govern Plaintiff's Claims<br>That He Never Agreed to the Arbitration Clause?</strong>

It is well settled that courts should apply state contract law to determine whether a binding

agreement to arbitrate exists. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Not so well settled is whether a choice of law provision in the policy should be honored

when determining whether both parties initially agreed to be bound by the Agreement. While case

law on the subject is sparse, courts in the Sixth Circuit have generally ignored such clauses when

dealing with questions of contract formation. *See Detroit Tigers, Inc. v. Ignite Sports Media, LLC*,

203 F. Supp. 2d 789 (E.D. Mich. 2002) ("The central dispute in this case is whether a contract

existed at all. Given these circumstances, the Court should find that the parties have not agreed to

a contractual choice of law provision.") (quoting *R & D Distrib. Corp. v. Health-Mor Indus.*, 118

F. Supp. 2d 806, 808 (E.D. Mich. 2000)); *Converge, Inc. v. Topy Corp.*, 2005 WL 3434799, 1-2

4

(E.D. Mich.) ("The central dispute in this case is whether a contract for the additional compensation existed at all. Thus, the choice of law provision in the contract is not applicable.").

If a contract is not governed by a forum selection clause, courts must conduct a traditional choice of law analysis. Both federal courts and Ohio have adopted the test set out by the Second Restatement on Conflict of Laws. *Morgan v. Biro Mfg. Co.*, 15 Ohio St.3d 339, 342 (1984); *see also DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 923 (6th Cir. 2006) (noting that the appropriate "federal common law" standard is the Restatement test).

The relevant factors are: a) the place of contracting; b) the place of negotiation of the contract; c) the place of performance; d) the location of the subject matter of the contract, and e) the domicile, residence, nationality, place of incorporation and place of business of the parties. Restatement (Second) Conflict of Laws § 188.

Ohio law governs whether the parties in this case agreed to arbitrate. Heiges' first argument – that he was not bound by the arbitration clause in the original contract because he did not sign it – and second argument – that he was individually never a party to the Agreement – are questions of contract formation. Accordingly, the choice of law provision included in the original Agreement, and subsequently amended is inapplicable to Heiges' first two claims.

Absent the choice of law clause, Ohio is the appropriate forum. The Agreement was applied for and signed in Ohio and, as the card was used by an Ohio corporation, its primary effect was in Ohio. Chase has not asserted any facts to the contrary. Its incorporation in Delaware, by itself, is not enough to tip the balance in its favor.

## B. Which State's Laws Govern Plaintiff's Claims Regarding the Illegal Nature of the Arbitration Clause?

Under Ohio law, a contractual choice-of-law provision is binding on the parties as long as it is reasonable and does not violate the forum's fundamental policy. *Durden*, *supra,* 448 F.3d at 924; Restatement (Second) of Conflict of Laws § 6.

No allegations have been made here that the application of Delaware law would violate the fundamental policy of Ohio or that its application would be unreasonable. Because those arguments are unrelated to whether an agreement initially was reached, Delaware law, as provided in the Agreement, applies to plaintiff's third and fourth arguments.

### 2. Analysis of Plaintiff's Claims

### A. Was Plaintiff Bound by the Arbitration Agreement
### Even Though He Did Not Sign a Credit Card Agreement?

Both Ohio, *Kelm v. Kelm*, 623 N.E.2d 39, 40 (Ohio 1993), and federal courts encourage arbitration to settle disputes. *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).

Nevertheless, courts may not force parties to arbitrate disputes if the parties have not entered into a valid agreement to do so. *Boedeker v. Rogers*, 136 Ohio App.3d 425, 428 (1999). As the Supreme Court of the United States has stressed, "arbitration is simply a matter of contract between the parties; it is a way to resolve disputes – but only those disputes that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

When a question exists as to whether a party has agreed to an arbitration clause, there is a presumption against arbitration. *Council of Smaller Enters. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 666 (1997).

Ordinary contract principles determine whether a party has agreed to arbitrate. *Kegg v. Mansfield*, 2000 WL 222118, 2 (Ohio Ct. App.). To have a valid contract, there must be a "meeting of the minds" on the essential terms of the agreement; a meeting of the minds is usually

6

demonstrated by an offer, acceptance, and consideration. *Reedy v. The Cincinnati Bengals, Inc.* 143 Ohio App. 3d 516, 521 (2001). An offer is defined as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Id.*

As explained in *Bank One, Columbus, NA v. Palmer*, 63 Ohio App. 3d 491, 493 (1989), under Ohio law "credit card agreements are contracts whereby the issuance and use of a credit card creates a legally binding agreement." A creditor need not produce a signed credit card application to prove the existence of a legally binding agreement. *Asset Acceptance LLC v. Davis, Fairfield App.*, 2004 WL 2940747, 2-5 (Ohio Ct. App.).

Accordingly, Heiges' argument that he never signed the underlying Agreement misses the relevant point. By simply using the card, he agreed to be bound by the Agreement and all its terms.

### B. Was the Plaintiff Bound by the Agreement Even if He Agreed to It in His Capacity as Corporate Employee?

Only sparse case law addresses the personal obligations of an individual employee who uses a credit card embossed with his name where the card was issued to his corporate employer.

Cases from other jurisdictions generally have found the individual to be bound by the agreement if the contract includes a clause extending liability to all persons named on the card or to whom the card issuer issued the card. *Baker v. Am. Express Travel Related Servs.,* 2002 WL 1205065, 2 (W.D. Ky.); *In re Adams*, 2007 Bankr. LEXIS 2026, 5-6 (Bankr. D.M.D. Ala.); *Am. Express Travel Related Servs., v. Redner*, 2006 Mich. App. LEXIS 728, 11 (Ct. App. Mich).

In *Adams* the court, considering a clause virtually identical to the one at issue in this case emphasized that "if a contract is unambiguous on its face, there is no room for construction and it

must be enforced as written." 2007 Bankr. LEXIS 2026, 5. Ohio courts generally recognize the same principle. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St. 2d 241, 245-46 (1978).

Likewise, in *Redner* the court explained: "A fundamental tenet of all contracts is the existence of mutual assent or a meeting of the minds on all essential terms of a contract. The actual mental processes of the contracting parties are irrelevant to the construction of contractual terms. . . it is their manifested intent that matters." 2006 Mich. App. LEXIS 728 at 11. The court in *Baker* agreed: "[The party] is charged with knowledge and acceptance of the terms he could have read in the exercise of ordinary care, including whether he [or she] assumed personal liability for use of the card." 2002 WL 1205065, 6.

Under Ohio law, moreover, "the parties bind themselves by the plain and ordinary language used in the contract unless those words lead to a manifest absurdity." *Maestle v. Best Buy Co.*, 2005 WL 1907282, 5 (2005). This is an objective interpretation of contractual intent based on the words the parties chose to use in the contract. *Id.*

Thus, where, as here, a credit card agreement unambiguously states that all persons named will be held liable, all such persons shall be bound by the agreement and its terms. The Agreement unambiguously states that any person named on the card is to be regarded as a "card member" and the person referred to as "you" throughout the Agreement. That plaintiff, in his own mind, may have thought that only the business was assuming liability is insignificant in the face of the clear words of the Agreement.

### C. Did Heiges Have Sufficient Knowledge to Agree to Arbitrate?

It is a cardinal rule of contract law, recognized by the Supreme Court more than a century ago, that a party is bound by a contract even if he did not read its contents. *Upton, Assignee v.*

8

*Tribilcock*, 91 U.S. 45, 50 (1875); *see also Graham v. State Farm Mutual Automobile Ins. Co.*, 565 A.2d 908, 913 (Del. 1989).

Provisions waiving the right to trial or jury do not have to meet the strict standard required of such waivers in the criminal context. *Marsh v. First USA Bank, N.A.*, 103 F. Supp. 2d 909, 921 (N.D. Tex. 2000) (applying Delaware law and rejecting strict standards).

In Delaware, moreover, the inconspicuousness of an arbitration clause does not provide a basis to invalidate an agreement to arbitrate. *See Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687-88 (1996) (holding that the Federal Arbitration Act preempted a state statute requiring that the arbitration clause be printed on the first page in capital letters); *Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 182-83 (3rd Cir. 1999) (holding that an arbitration clause was not unenforceable even though it was in fine print on the back of a standard contract).

Heiges alleges, on various grounds, that he was unaware of the effects of the arbitration clause. I find none of his contentions to be well taken.

He first alleges that Chase did not state in the Agreement that it was attempting to waive Heiges' constitutional right to a trial and jury. On the contrary, all three of the arbitration clauses explicitly stated such.

Second, Heiges asserts he was never personally sent a copy of the Agreement, and thus was unaware of its provisions. It is not clear whether he is merely rehashing his earlier argument, which I have already rejected, that he was not bound by the agreement, or if contends that he never saw or received a copy of the contract.

As to any claim of not seeing a copy of the agreement, Heiges does not dispute receiving monthly statements, including the statements that came with amendments to the Agreement.

9

Regardless, these statements included telephone numbers that he could have called to obtain a copy of the Agreement. If he called that number, he could have learned that the language of the Agreement subjected him to personal liability for the charges placed on the card. *See Baker*, *supra*, 2002 WL 1205065, 2 (noting that plaintiff was liable for charges because a number was listed on the back of the credit card which he could have called and obtained a copy of the Agreement).

Third, Heiges alleges that the arbitration Agreement is one-sided. This allegation is directly contradicted by the explicit wording of each of the arbitration clauses. Each of the clauses stated that they would cover any claim by "you" or "us" – which would include any claim of wrongdoing by Chase.

Fourth, Heiges alleges that he was unaware that arbitration would be presided over by either the National Arbitration Forum or the American Arbitration Association. All three versions of the arbitration agreement specifically included language on this point.

### D. Is the Arbitration Agreement Unconscionable?

Under the principles of Delaware contract law, if, as a matter of law, a contract contains an unconscionable provision, a court may either: 1) refuse to enforce the contract; 2) sever the unconscionable portion; or 3) modify the application of any unconscionable clause. Del. Code Ann. tit. 6, § 2-302.

To render a contractual provision void on the basis of unconscionability, a court must find that the party with superior bargaining power took unfair advantage of the other party. *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 912 (Del. 1989). Thus, for a contract provision to be deemed unconscionable, its terms must be "so one-sided as to be oppressive." *Id.* Mere disparity in bargaining power will not support a finding of unconscionability. *Id.*

10

Delaware courts have already considered and rejected Heiges' claims of substantive and procedural unconscionability.

Thus, the adhesion nature of a contract is not a basis, without more, for finding its provisions substantively unconscionable. *Id.* at 911 (explaining that the adhesive nature of a contract does not create a presumption that is unenforceable, but rather only affects the contract's interpretation); *see also Edelist v. MBNA Am. Bank*, 790 A.2d 1249, 1261 (Del. Super. Ct. 2001) (rejecting challenges based on limitation of class actions).

Likewise, in contrast to Heiges' assertions, the most recent version of the arbitration Agreement provides that attorneys fees and punitive damages may be awarded if the law so mandates. This further defeats his assertions about unconscionability.

Heiges also claims that arbitration will be prohibitively costly; but he provides no support for this claim. A party challenging arbitration on the grounds that prohibitive costs of arbitration prevent the vindication of federal statutory rights bears the burden of showing the likelihood of incurring prohibitive costs; the mere contention that the cost of arbitration would be excessive, without any record support, is insufficient to invalidate an arbitration agreement.[1] *Green Tree Fin. Corporation-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000). Heiges' unsupported allegations are insufficient to prove his claim.

---

[1] This same rationale applies to Heiges' state law claims. In *Nefores v. Branddirect Marketing*, 2004 WL 2260703 (Ohio Ct. App.), cited by Heiges, the plaintiff presented an affidavit asserting that the costs of arbitration would be prohibitive. Heiges has not even provided that much. This is not to mention that in this case the agreement specifies that Chase will cover the first $500 of filing costs and the fees of the arbitrator for the first two days of arbitration. [Doc. 22-3]. Nor does this account for the fact that *Nefores* was decided by an Ohio court; as discussed, Delaware law governs Heiges' unconscionability claim.

Heiges' first two arguments regarding the alleged procedural unconscionability of the agreement merely repeat arguments that I have already rejected (namely that): 1) he is being subjected to a contract to which he never agreed; and 2) he had no knowledge of the terms to which he was agreeing. His additional argument regarding his inability to understand the terms of the contract is unpersuasive in light of the unambiguous words of the Agreement. *Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 928 (Del. 1982) ("[w]e have consistently held that an insured has a duty to read his insurance policy and he is bound by the provisions thereof if they are clear and unequivocal.").

## Conclusion

Heiges was bound by the terms of the cardholder Agreement, which is in no way legally defective. Chase is entitled to have the merits of the underlying dispute submitted to arbitration in accordance with the Agreement.

It is, therefore, hereby

ORDERED THAT: defendant's motion for a stay pending the completion of arbitration shall be, and hereby is granted.

So ordered.

<u>s/James G. Carr</u>
James G. Carr
Chief Judge

12